UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BALAJI NAGARAJ,

                              Plaintiff,                        **REPORT AND**
                                                                               **RECOMMENDATION**
          -against-                                   CV 18-4748 (JS) (AYS)

SANDATA TECHNOLOGIES, LLC,

                              Defendant.
-----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Defendant's motion to dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion in its entirety. For the reasons set forth below, this Court respectfully recommends that Defendant's motion be granted and that Plaintiff's Amended Complaint be dismissed.

BACKGROUND

       The facts set forth below are those set forth in Plaintiff's Amended Complaint. As discussed below, they are accepted as true for the purposes of this motion.

       Plaintiff, Balaji Nagaraj ("Plaintiff"), is a forty-eight-year-old South Asian male of Indian ethnicity, who speaks with an accent. (Am. Compl., Docket Entry ("DE") [10], ¶ 5.) In August 2004, Plaintiff commenced employment with Defendant, Sandata Technologies, LLC ("Defendant" or "Sandata"), as a Unix Database Administrator, pursuant to a work visa sponsored by Defendant. (Id. ¶¶ 6-7.) Although Plaintiff possessed all of the qualifications for a green card under category EB2, Sandata sponsored him under category EB3, which Plaintiff inadvertently discovered years later. (Id. ¶ 8.) When Plaintiff requested that Sandata change its sponsorship to afford Plaintiff a green card under category EB2, Defendant refused to do so. (Id.

1

¶ 9.) Plaintiff contacted Sandata's President concerning his green card category and his sponsorship was changed to category EB2. (Id.)

During his tenure with Sandata, Plaintiff repeatedly received "Average" to "Above Average" performance evaluations. (Id. ¶ 10.) Initially, Plaintiff was supervised by Frank Duci ("Duci"), Vice President of Operations, who is Caucasian. (Id. ¶ 11.) According to the Complaint, Duci verbally harassed Plaintiff with belittling comments, racially offensive ridicule and purposely treated Plaintiff differently from his non-South Asian and non-Indian co-workers. (Id. ¶ 13.) Specifically, Duci accused Plaintiff of being an "Arab terrorist" and told Plaintiff "You are into bombing; are you going to bomb Sandata?" (Id. ¶ 14.) Duci further accused Plaintiff of wearing a "bomb belt" and asked him "why his people blow themselves up." (Id.) Although Plaintiff advised Duci that he was not Muslim, Duci continued to make remarks about Plaintiff being a terrorist. (Id. ¶ 15.) Whenever Duci heard of an event in the Middle East concerning ISIS, Duci would accuse Plaintiff of condoning such actions. (Id. ¶¶ 15-16.)

Duci also made comments concerning Plaintiff's accent, stating that Plaintiff "could not speak fucking English" because "you Indians can't speak fucking English." (Id. ¶ 17.) In addition, Duci called Plaintiff a "slumdog" and told him he should not be proud of his South Asian race or Indian ethnicity. (Id. ¶ 18.) Plaintiff confronted Duci about his behavior but Duci continued his harassment. (Id. ¶ 19.)

The Complaint further alleges that Duci treated Plaintiff differently than his non-South Asian co-workers. Specifically, because Plaintiff is a single father, he would often have to drive his children to school in the morning, causing him to be five to ten minutes late to work. (Id. ¶ 21.) Although Plaintiff would inform Duci when he was running late as a result of taking his children to school, Duci recorded every lateness that Plaintiff accrued. (Id. ¶ 22.) However,

Duci permitted Plaintiff's non-South Asian co-workers to arrive late to work without incident and did not record their lateness. (Id.) Moreover, while Defendant afforded its employees an automatic annual salary increment, Plaintiff was not given an annual raise for approximately two years. (Id. ¶ 25.)

In or around 2010,[1] Duci promised Plaintiff that he would be promoted to a Senior Unix Database Administrator, which would be accompanied by a significant raise. (Id. ¶ 26.) Instead, however, Duci promoted Brian Kenney ("Kenney"), a Caucasian whom Plaintiff had trained, to a similar position as Plaintiff and Plaintiff was kept in his original position at his then current salary. (Id.)

In April 2014, Kenney resigned from Sandata, leaving Plaintiff as the only Unix Database Administrator. (Id. ¶ 27.) Since Plaintiff was now performing the work of two employees, he requested a raise. (Id. ¶ 28.) Duci acknowledged Plaintiff's extra work and promised him a $10,000 bonus and a four to five percent raise. (Id.) However, even though Plaintiff received a positive performance evaluation in May 2015, he only received a $1,200 bonus and a two percent raise. (Id. ¶ 29.) At the same time, another employee of Sandata, Alex Gouskos, a Caucasian Network Engineer, received a promotion and a substantial raise. (Id. ¶ 30.)

On or about April 22, 2015, Plaintiff complained about Duci's discriminatory treatment to Sandata's Chief Technology Officer ("CTO"), Barbara Ann. (Id. ¶ 31.) Plaintiff also complained about Duci's treatment to Sandata's Chief Executive Officer ("CEO"), Tom

---

[1] The Amended Complaint alleges that in or around 2009, Duci was promoted and David Meyer ("Meyer"), also a Caucasian, became Plaintiff's supervisor. (Am. Compl. ¶ 12.) However, the allegations of discrimination set forth in the Amended Complaint pertain only to Duci and continue beyond 2009.

3

Underwood, in mid-May 2015. (Id. ¶ 32.) Neither individual took any steps to remediate the situation. (Id. ¶¶ 31-32.)

Plaintiff resigned from his position at Sandata on June 5, 2015. (Id. ¶ 34.) Plaintiff commenced the within action on August 22, 2018, alleging race and national origin discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") and the New York Human Rights Law, N.Y. Exec. Law § 296. (Compl., DE [1].) Plaintiff thereafter amended his Complaint to withdraw the New York Human Rights Law claim and now proceeds solely under Section 1981.

Presently before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint on the grounds that: (1) all of the discriminatory and retaliatory conduct alleged to have occurred is time-barred; (2) Plaintiff fails to state a claim for race discrimination; and (3) that because Plaintiff previously litigated against Defendant in state court under a theory of national origin discrimination,[2] he should be equitably estopped from asserting a claim for race discrimination herein. (Def. Mot. to Dismiss, DE [12].)

## DISCUSSION

I.  Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the

---

[2] The state court action was dismissed without prejudice on a discovery related issue and not on the merits. (Am. Compl. ¶ 37.)

4

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

III.   The Majority of Plaintiff's Section 1981 Claim is Time-Barred

As a threshold matter, Defendant argues that many of the incidents about which Plaintiff complains are time-barred. "Claims under Section 1981 are subject to a four-year statute of limitations period." Bermudez v. City of New York, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (citation omitted). Accordingly, since the Complaint herein was filed on August 22, 2018, any discriminatory actions alleged to have occurred prior to August 22, 2014 are time-barred.

In response, Plaintiff argues that the Court should apply the continuing violation doctrine. Under the continuing violation doctrine, "if a plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)). A

5

continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Fitzgerald, 251 F.3d at 259 (quoting Cornwall v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)). Where a continuing violation is demonstrated, the plaintiff "is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." Fitzgerald, 251 F.3d at 359 (citing cases).

As a general matter, however, "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Kubicek v. Westchester County, No. 08-CV-372, 2009 WL 3720155, at *6 (S.D.N.Y. Oct. 8. 2009) (quoting Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); Bernstein v. Mony Group, Inc., 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor."). Moreover, "discrete discriminatory acts are not actionable if time-barred, even where they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996) ("[D]iscrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation."). Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. Such acts include "termination, failure to promote, denial of transfer, or refusal to hire" and constitute "separate actionable unlawful employment practice[s]." Id. at 114 (internal quotation marks omitted).

Here, Plaintiff identifies various discrete acts upon which he bases his discrimination and retaliation claims, including unspecified instances of verbal harassment and denial of a promotion. All such acts occurred prior to August 22, 2014 and, for the reasons set forth above, are time-barred. Moreover, Plaintiff has failed to submit any evidence from which the Court can infer that a practice or policy of discrimination occurred that would warrant applying the continuing violation doctrine. Rather, Plaintiff alleges separate discrete acts of discrimination and retaliation prior to 2014. Accordingly, it is respectfully recommended that the District Court not apply the continuing violation doctrine and that Defendant's motion to dismiss be granted with respect to any acts of discrimination or retaliation alleged to have taken place prior to August 22, 2014, on the grounds that those acts are time-barred.

IV. <u>The Remainder of Plaintiff's Section 1981 Claim</u>

The only acts alleged in the Amended Complaint that are not time-barred are the less-than-expected raise and bonus that Plaintiff received in May 2015, his complaints of discriminatory treatment to the CTO and CEO in April and May 2015, and his eventual resignation on June 5, 2015, which Plaintiff alleges constitutes a constructive discharge. However, the Amended Complaint fails to link these acts to any allegedly discriminatory intent on the part of Defendant.

With respect to the raise and bonus that Plaintiff received in May 2015, Plaintiff alleges that because he was doing the work of two Unix Database Administrators, Duci "promised him a $10,000 bonus and a four (4%) to five (5%) percent raise." (Am. Compl. ¶ 28.) Instead, however, Plaintiff only received a $1,200 bonus and a two percent (2%) raise. (<u>Id.</u> ¶ 29.) Plaintiff asserts that his less-than-expected raise and bonus were the result of discrimination because at the same time, Alex Gouskos ("Gouskos"), a Caucasian Network Engineer, was

7

promoted to Senior Network Engineer and "awarded a substantial raise." (Id. ¶ 30.) Such allegations fail to state a claim for discrimination. As the Amended Complaint acknowledges, Gouskos received a promotion in connection with his raise and bonus, as compared to Plaintiff, who was simply being awarded a yearly merit-based raise and bonus. Moreover, Gouskos did not hold the same position as Plaintiff. Gouskos was a Network Engineer while Plaintiff was a Unix Database Administrator. Finally, although Plaintiff alleges that Gouskos received a "substantial raise," he fails to specify the actual amount of that raise or how it compared to the raise Plaintiff received. Accordingly, the facts pled in the Amended Complaint simply fail to state a plausible claim that Plaintiff's less-than-expected raise and bonus was the result of discrimination on the part of Defendant.

With respect to Plaintiff's claims that his complaints of discrimination to Defendant's CTO and CEO went ignored, the Amended Complaint simply alleges that Plaintiff complained about Duci's "discriminatory treatment towards him based on his South Asian race and Indian ancestry and ethnicity." (Id. ¶¶ 32, 33.) However, the facts alleged do not specify what exactly Duci's discriminatory treatment consisted of. To the extent Plaintiff's complaints were based on Duci's conduct prior to August 2014, those claims are time-barred. If Plaintiff's complaints were based on Duci's failure to provide him with a higher raise and bonus, as Plaintiff expected, such conduct fails to state a plausible claim for discrimination, as set forth above.

Finally, Plaintiff alleges that "in order to escape his toxic work environment," he resigned from his position on June 5, 2015, constituting a constructive discharge "[s]ince Plaintiff had no other option but to resign." (Id. ¶¶ 34-35.) However, the Amended Complaint fails to specify any timely acts that made Plaintiff's working environment "toxic." Rather, Plaintiff generally and conclusorily asserts that he was discriminated against based on his race and ethnicity and, as

8

a result, was forced to resign. Such allegations fail to provide the Court with sufficient information from which it can infer discriminatory intent on Defendant's part to state a plausible claim for race and national origin discrimination and retaliation under Section 1981.

Based on the foregoing, this Court respectfully recommends that Defendant's motion to dismiss Plaintiff's Amended Complaint be granted and that the Amended Complaint be dismissed in its entirety. Since this Court finds that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, there is no need to consider Defendant's remaining arguments concerning judicial notice of Plaintiff's state court action and equitable estoppel.

V.      Leave to Replead

While Plaintiff does not request leave to amend in the event Defendant's motion to dismiss is granted, "it is the usual practice upon granting a motion to dismiss to allow leave to replead." Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013). Accordingly, this Court recommends that Plaintiff be granted leave to replead his Section 1981 claim with respect to those parts of the claim that are not time-barred. Plaintiff is cautioned, however, that in the event this Report and Recommendation is adopted and Plaintiff is granted leave to replead, amendment should only be attempted if he has additional factual matters to allege that would cure the deficits identified by this Court.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion to dismiss, appearing at Docket Entry [12], be granted and that Plaintiff's Amended Complaint be dismissed in its entirety, without prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
  July 8, 2019                                                    /s/    Anne. Y. Shields
                                                                   ANNE Y. SHIELDS
                                                                   United States Magistrate Judge