UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BALAJI NAGARAJ,

                                Plaintiff,                                      **REPORT AND**
                                                                               **RECOMMENDATION**
          -against-                                                   CV 18-4748 (JS) (AYS)

SANDATA TECHNOLOGIES, LLC.,

                                Defendant.
------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Defendant's motion to dismiss Plaintiff's Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the reasons set forth below, this Court respectfully recommends that Defendant's motion be granted in part and denied in part.

## BACKGROUND

      The facts set forth below are those set forth in Plaintiff's Second Amended Complaint. As discussed below, they are accepted as true for the purposes of this motion.

      Plaintiff, Balaji Nagaraj ("Plaintiff"), is a South Asian male of Indian ethnicity, who speaks with an accent. (2d Am. Compl., Docket Entry ("DE") [19], ¶ 5.) In August 2004, Plaintiff commenced employment with Defendant, Sandata Technologies, LLC ("Defendant" or "Sandata"), as a Unix Database Administrator, pursuant to a work visa sponsored by Defendant. (Id. ¶¶ 6-7.) Although Plaintiff possessed all of the qualifications for a green card under category EB2, Sandata sponsored him under category EB3, which Plaintiff inadvertently discovered years later. (Id. ¶ 8.) When Plaintiff requested that Sandata change its sponsorship to afford Plaintiff a green card under category EB2, Defendant refused to do so. (Id. ¶ 9.) Plaintiff

1

contacted Sandata's President concerning his green card category and his sponsorship was changed to category EB2. (Id.)

During his tenure with Sandata, Plaintiff repeatedly received "Average" to "Above Average" performance evaluations. (Id. ¶ 10.) Initially, Plaintiff was supervised by Frank Duci ("Duci"), Vice President of Operations, who is Caucasian. (Id. ¶ 11.) According to the Second Amended Complaint, Duci verbally harassed Plaintiff with belittling comments, racially offensive ridicule and purposely treated Plaintiff differently from his non-South Asian and non-Indian co-workers. (Id. ¶ 13.) Specifically, Duci accused Plaintiff of being an "Arab terrorist" and told Plaintiff "You are into bombing; are you going to bomb Sandata?" (Id. ¶ 14.) Duci further accused Plaintiff of wearing a "bomb belt" and asked him "why his people blow themselves up." (Id.) Although Plaintiff advised Duci that he was not Muslim, Duci continued to make remarks about Plaintiff being a terrorist. (Id. ¶ 15.) Whenever Duci heard of an event in the Middle East concerning ISIS, Duci would accuse Plaintiff of condoning such actions. (Id. ¶¶ 15-16.)

Duci also made comments concerning Plaintiff's accent, stating that Plaintiff "could not speak fucking English" because "you Indians can't speak fucking English." (Id. ¶ 17.) In addition, Duci called Plaintiff a "slumdog" and told him he should not be proud of his South Asian race or Indian ethnicity. (Id. ¶ 18.) Plaintiff confronted Duci about his behavior but Duci continued his harassment. (Id. ¶ 19.)

The Second Amended Complaint further alleges that Duci treated Plaintiff differently than his non-South Asian co-workers. (Id. ¶ 20.) Specifically, because Plaintiff is a single father, he would often have to drive his children to school in the morning, causing him to be five to ten minutes late to work. (Id. ¶ 21.) Although Plaintiff would inform Duci when he was

running late as a result of taking his children to school, Duci recorded every lateness that Plaintiff accrued. (Id. ¶ 22.) However, Duci permitted Plaintiff's non-South Asian co-workers to arrive late to work without incident and did not record their lateness. (Id.) Moreover, while Defendant afforded its employees an automatic annual salary increment, Plaintiff was not given an annual raise for approximately two years. (Id. ¶ 25.)

In or around 2010,[1] Duci promised Plaintiff that he would be promoted to a Senior Unix Database Administrator, which would be accompanied by a significant raise. (Id. ¶ 25.) In April 2014, Brian Kenney, another Unix Database Administrator for Sandata, resigned, leaving Plaintiff as the only Unix Database Administrator. (Id. ¶ 24.) Since Plaintiff was now performing the work of two employees, he requested a raise. (Id. ¶ 25.) Duci acknowledged Plaintiff's extra work and promised him a $10,000 bonus and a four to five percent raise in lieu of a promotion because such a promotion for Plaintiff would "raise red flags." (Id.)

In July 2014, Plaintiff asked for training on a product called "puppet," which was provided to all of Sandata's Caucasian employees "without question." (Id. ¶ 27.) Duci denied Plaintiff's request for the training, stating that Sandata "could not afford to send him" for such training. (Id.) Duci also denied Plaintiff other training he requested, while sending Caucasian employees to the requested training. (Id.)

In December 2014, Plaintiff was working on a server migration and again inquired about a raise. (Id. ¶ 26.) Duci advised Plaintiff that such a raise would "raise red flags" and instead, promised Plaintiff a large bonus. (Id. ¶ 26.) That same month, Duci forced Plaintiff to cut a

---

[1] The Second Amended Complaint alleges that in or around 2009, Duci was promoted and David Meyer ("Meyer"), also a Caucasian, became Plaintiff's supervisor. (2d Am. Compl. ¶ 12.) However, the allegations of discrimination set forth in the Second Amended Complaint pertain only to Duci and continue beyond 2009.

3

planned vacation short to work on a major migration project. (Id. ¶ 28.) Again, Plaintiff requested a raise and was told he would get a bonus instead. (Id.) However, even though Plaintiff received a positive performance evaluation in May 2015, he only received a $1,200 bonus and a two percent raise. (Id. ¶ 29.) At the same time, another employee of Sandata, Alex Gouskos, a Caucasian Network Engineer, received a promotion and a substantial raise. (Id. ¶ 30.)

On or about April 22, 2015, Plaintiff complained about Duci's discriminatory treatment to Sandata's Chief Technology Officer ("CTO"), Barbara Ann. (Id. ¶ 31.) Plaintiff also complained about Duci's treatment to Sandata's Chief Executive Officer ("CEO"), Tom Underwood, in mid-May 2015. (Id. ¶ 32.) Neither individual took any steps to remediate the situation. (Id. ¶¶ 31-32.) Upon learning of Plaintiff's complaints, Duci "redoubled his discriminatory behavior," including calling Plaintiff into a meeting where he verbally berated him with "various vulgarities." (Id. ¶ 33.)

Plaintiff resigned from his position at Sandata on June 5, 2015. (Id. ¶ 35.) Plaintiff commenced this action on August 22, 2018, alleging race and national origin discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") and the New York Human Rights Law, N.Y. Exec. Law § 296. (Compl., DE [1].) Plaintiff thereafter amended his Complaint to withdraw the New York Human Rights Law claim and to proceed solely under Section 1981.

In February 2019, Defendant moved to dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE [12].). Judge Seybert referred the motion to this Court and on July 8, 2019, this Court issued a Report and Recommendation ("R&R"), recommending that Defendant's motion be granted and that Plaintiff's Amended Complaint be dismissed in its entirety, with leave to replead. (DE [18].) No objections to the R&R were filed,

4

and on August 6, 2019, Judge Seybert adopted the R&R in its entirety. (Order of Seybert J., dated Aug. 6, 2019.)

Plaintiff thereafter filed his Second Amended Complaint on August 20, 2019, which is largely identical to the Amended Complaint, and contains one claim for race discrimination, pursuant to Section 1981. Presently before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint on the grounds that: (1) Plaintiff's new allegations of discrimination are time-barred; (2) Plaintiff fails to state a claim for race discrimination under Section 1981; and, (3) because Plaintiff previously litigated against Defendant in state court under a theory of national origin discrimination,[2] he should be equitably estopped from asserting a claim for race discrimination herein. (Def. Mot. to Dismiss, DE [24].)

## DISCUSSION

I. Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

---

[2] The state court action was dismissed without prejudice on a discovery related issue and not on the merits. (2d Am. Compl. ¶ 39.)

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.     The Timeliness of Plaintiff's Claims

As this Court previously found, because "[c]laims under Section 1981 are subject to a four-year statute of limitations period," Bermudez v. City of New York, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (citation omitted), any discriminatory actions alleged to have occurred prior to August 22, 2014 are time-barred. (R&R at 7.) This finding was adopted by the District Court.

For the most part, the Second Amended Complaint merely reiterates the same conduct already found to be time-barred. The few new allegations do nothing to cure this defect. Specifically, Plaintiff now alleges that in July 2014, Duci denied him a training opportunity, a fact that was not alleged in the Amended Complaint. (2d Am Compl. ¶ 27.) However, an event in July 2014 falls outside of the limitations period and is therefore clearly time-barred as well. Accordingly, the only timely new allegation Plaintiff makes is that in December 2014, Duci forced him to cut a planned vacation short to work on a major migration project. (Id. ¶ 28.) However, as the District Court in this case has previously held, "[d]enials of vacation time are not adverse actions." Wharton v. County of Nassau, No. 10-CV-0265, 2013 WL 4851713, at *9 (E.D.N.Y. Sept. 10, 2013) (citing Kaur v, New York City Health & Hosps. Corp., 688 F. Supp.

6

2d 317, 332 (S.D.N.Y. 2010)) (additional citations omitted).  Therefore, even though this new allegation is timely, it does nothing to further Plaintiff's race discrimination claim since forcing Plaintiff to cut short a planned vacation cannot constitute an adverse employment action.

III.     Race Discrimination Under Section 1981

Section 1981 prohibits discrimination based on race and has been held to encompass "discrimination based on ancestry or ethnic characteristics as well." Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) (citing cases).  Establishing a race discrimination claim under Section 1981 requires a plaintiff to "plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. National Ass'n of Af. Am.-Owned Media, __ U.S. __, 140 S. Ct. 1009, 1019 (2020).  Of course, Plaintiff must also demonstrate an adverse employment action.  See Bowman v. New York State Housing & Community Renewal, No. 18 Civ. 11596, 2020 WL 1233701, at *5 (S.D.N.Y. Mar. 13, 2020) (citing Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012)).

As found in the previous R&R, the only acts alleged in the Amended Complaint that are not time-barred are the less-than-expected raise and bonus that Plaintiff received in May 2015, his complaints of discriminatory treatment to the CTO and CEO in April and May 2015, and his eventual resignation on June 5, 2015, which Plaintiff alleges constitutes a constructive discharge. (R&R at 7.)  The first event is alleged in support of Plaintiff's disparate treatment claim, while the second and third appear to allege a hostile work environment.[3]

With respect to the raise and bonus that Plaintiff received in May 2015, Plaintiff alleges that because he was doing the work of two Unix Database Administrators, Duci "promised him a

---

[3] While Plaintiff does not include a separate cause of action alleging a hostile work environment, the facts set forth in the Second Amended Complaint clearly aim to assert such a claim.

$10,000 bonus and a four (4%) to five (5%) percent raise." (2d Am. Compl. ¶ 25.) Instead, however, Plaintiff only received a $1,200 bonus and a two percent (2%) raise. (Id. ¶ 29.) Plaintiff asserts that his less-than-expected raise and bonus were the result of discrimination because at the same time, Alex Gouskos ("Gouskos"), a Caucasian Network Engineer, was promoted to Senior Network Engineer and "awarded a substantial raise." (Id. ¶ 30.) Such allegations fail to state a claim for discrimination.

As the Second Amended Complaint acknowledges, Gouskos received a promotion in connection with his raise and bonus, as compared to Plaintiff, who was simply being awarded a yearly merit-based raise and bonus. Moreover, Gouskos did not hold the same position as Plaintiff. Gouskos was a Network Engineer while Plaintiff was a Unix Database Administrator. Finally, although Plaintiff alleges that Gouskos received a "substantial raise," he fails to specify the actual amount of that raise or how it compared to the raise Plaintiff received. Accordingly, the facts pled in the Second Amended Complaint simply fail to state a plausible claim that Plaintiff's less-than-expected raise and bonus were the result of discrimination on the part of Defendant and this claim should be dismissed.

With respect to his claim of a hostile work environment, Plaintiff alleges that his complaints regarding Duci's derogatory comments to Defendant's CTO and CEO went ignored. (Id. ¶¶ 31- 32.) Plaintiff further alleges that when Duci learned that Plaintiff had complained about him, he "called Plaintiff into a meeting where he verbally berated [him] with various vulgarities." (Id. ¶ 33.) Finally, Plaintiff alleges that "in order to escape his toxic work environment," he resigned from his position on June 5, 2015, constituting a constructive discharge "[s]ince Plaintiff had no other option but to resign." (Id. ¶¶ 35, 37.)

The standard for demonstrating a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Section 1981 is "essentially the same." Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) (citing cases). To sufficiently plead a hostile work environment claim, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn v. City of New York, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In determining whether a work environment is hostile, the court considers the totality of the circumstances, including "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 319 (2d Cir. 1999) (citing 999) (citing Harris, 510 U.S. at 23).

The plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of the working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). "Isolated incidents or episodic conduct will not support a hostile work environment claim." Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 437 (2d Cir. 1999). "For racist comments, slurs and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Snell v. Sufolk County, 782 F.2d 1094, 1103 (2d Cir. 1986)).

Here, the facts alleged in the Second Amended Complaint state a plausible claim for race discrimination based on a hostile work environment. During the course of Plaintiff's employment, Duci repeatedly made references to Plaintiff being a "terrorist" and a "slumdog" based on his Indian ethnicity and South Asian race, eventually leading to Plaintiff's decision to resign. While Defendant argues that Plaintiff's allegations really center on national origin discrimination, as stated above, Section 1981 has been held to encompass "discrimination based on ancestry or ethnic characteristics as well." Anderson, 156 F.3d 167 at 170. Accordingly, Plaintiff's claim that Duci subjected him to a hostile work environment by calling him derogatory names and ridiculing the way he speaks clearly falls within the realm of a Section 1981 race discrimination claim. While Plaintiff may face an uphill battle on summary judgment or at trial given the sporadic instances alleged to have occurred, when viewing the facts in the light most favorable to Plaintiff, as the Court must at this juncture, there is enough alleged to survive a motion to dismiss the claim of a hostile work environment.

Based on the foregoing, this Court respectfully recommends that Defendant's motion to dismiss Plaintiff's Second Amended Complaint be granted with respect to Plaintiff's claim of disparate treatment under Section 1981, but denied with respect to his claim of a hostile work environment. Plaintiff should be permitted to proceed with this action solely with respect to a claim of a hostile work environment based on race discrimination culminating in a constructive discharge.[4]

---

[4] The Court notes that although the prior complaints in this action also included allegations of a hostile work environment, the issue was not previously briefed by Plaintiff, as it is with respect to the instant motion to dismiss. Accordingly, the prior R&R issued by this Court did not address a hostile work environment claim when it recommended dismissal. In light of the arguments raised in connection with the current motion to dismiss, as well as the allegations set forth in the Second Amended Complaint, this Court finds such consideration to now be appropriate.

IV.      <u>Judicial Notice and Equitable Estoppel</u>

Defendant's final argument in support of dismissal is that, based on his prior judicial admissions, Plaintiff should be equitably estopped from arguing race discrimination when this action has been proceeding under a theory of national origin discrimination since its inception. The Court notes that Plaintiff fails to address this argument in his opposition.

While an "assertion of fact in a pleading is a judicial admission by which [a party] normally is bound throughout the course of the proceeding," <u>Fiedler v. Incandela</u>, 222 F. Supp. 3d 141, 157 (E.D.N.Y. 2016) (quoting <u>Bellefonte Reinsurance Co. v. Argonaut Ins. Co.</u>, 757 F.2d 523, 528 (2d Cir. 1985)), "the general rule seems to be that a judicial admission only binds the party that makes it in the action in which it is made, not in separate and subsequent cases." <u>Hausler v. JP Morgan Chase Bank, N.A.</u>, 127 F. Supp. 3d 17, 38 (S.D.N.Y. 2015). Accordingly, Plaintiff's allegations based on national origin discrimination in the prior state court action are not binding in this action, but rather, may only be considered as evidence, which Defendant may offer at the time of summary judgment or trial. <u>See</u> <u>id.</u>

As to the allegations proffered in this action, it is clear from the first Complaint filed that Plaintiff was asserting a claim of race discrimination, along with a claim of national origin discrimination. (Compl. ¶ 43.) While Defendant is correct that Plaintiff must ultimately demonstrate that race is the but-for cause of his discrimination, alternative pleading is permitted at the initial stages of an action. <u>See</u> <u>Kruse v. Wells Fargo Home Mortg., Inc.</u>, 383 F.3d 49, 55 n.3 (2d Cir. 2004) (noting that the Federal Rules "permit[] pleading inconsistent theories in the alternative"); <u>Delgado v. Ocwen Loan Servicing, LLC</u>, No. No 13-CV-4427, 2017 WL 5201079, at *15 (E.D.N.Y. Nov. 9, 2017) (noting that the Federal Rules "expressly contemplate[] pleading in the alternative regardless of inconsistency").

11

With respect to Defendant's argument of equitable estoppel, the doctrine is an affirmative defense, which requires a party to show a "(1) misrepresentation of fact; (2) intention or expectation that such acts will be relied upon; [and] (3) reliance upon the misrepresentations to the detriment of the innocent party." Edward B. Beharry & Co., Ltd. V. Bedessee Imports Inc., No. 09-CV-77, 2013 WL 12363612, at *6 (E.D.N.Y. June 24, 2013) (citing Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 725 (2d Cir. 2001)). While a complaint may be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense, to do so, the defense must "appear[] on the face of the complaint." Official Comm. of Unsecured Creditors v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). "Notably, assessing equitable estoppel ordinarily presents issues of fact." Edward B. Beharry, 2013 WL 12363612, at *6 (citing Bennett v. U.S. Lines, Inc., 64 F.3d 62, 65 (2d Cir. 1995)) (additional citation omitted).

Here, the face of the Second Amended Complaint contains none of the elements of an equitable estoppel defense. Moreover, the determination of whether equitable estoppel applies in this case "will require additional facts outside of the [Second] Amended Complaint, and thus cannot be decided on a motion to dismiss." Edward B. Beharry, 2013 WL 12363612, at *6 (citation omitted); see also Levine v. AtriCure, Inc., 594 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (finding defendants' reliance on "unproven, highly fact specific arguments" regarding its affirmative defense "underscores the impropriety of resolving these issues on a motion to dismiss"). Accordingly, this Court respectfully recommends that Defendant's motion to dismiss on the grounds of judicial notice and equitable estoppel be denied and that Defendant be permitted to renew its arguments at the time of summary judgment or trial.

12

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion to dismiss, appearing at Docket Entry [24], be granted in part and denied in part. Specifically, Plaintiff's Section 1981 race discrimination claim on the basis of disparate treatment should be dismissed. Plaintiff's action should be permitted to proceed solely with respect to a Section 1981 race discrimination claim based on a hostile work environment, culminating in a constructive discharge.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
June 16, 2020

/s/    Anne. Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge

13